**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY and THE TRUSTEES OF PRINCETON UNIVERSITY., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:14-cv-1647-TWP-DKL |
| | ) |
| NANG KUANG PHARMACEUTICAL CO., LTD., and CANDA NK-2, LLC, | ) ) ) |
| Defendants. | ) ) |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR JURISDICTIONAL DISCOVERY**
**AND TO STAY DEFENDANTS' MOTION TO DISMISS**

Defendants have filed a motion to dismiss this case for lack of personal jurisdiction. Their motion is premised on fact-intensive allegations about the locations of their operations, their contractual relationship with one another, their alleged lack of contacts with Indiana, and the purported status as an indispensable party of Defendant CANDA NK-2, LLC ("CANDA")— a recently-created LLC that was apparently created for purposes of this litigation.  Their contentions are allegedly supported by two witness declarations accompanied by exhibits that are so heavily redacted as to be essentially unreadable.

Defendants' submissions place at issue numerous facts that are exclusively in Defendants' control, not only as to Defendants' contacts (or purported lack thereof) with Indiana, but also as to CANDA's interests in this case and Nang Kuang's purported contacts with Texas (which, Defendants contend, prevent this Court from exercising personal jurisdiction under Fed. R. Civ. P. 4(k)(2)).  Defendants' submissions also all but ignore other facts as to which Plaintiffs

should be entitled to jurisdictional discovery.  In particular, Defendants' submissions address specific personal jurisdiction in only a conclusory fashion, alleging that because the act of patent infringement at issue here is a "technical" one—the filing of an abbreviated new drug application (ANDA) with a certification that Plaintiffs' patents are invalid or not infringed—there can be no specific jurisdiction.  But that ignores the fact that the relief Plaintiffs seek is prospective, and that Defendants' submissions evince intent to infringe Plaintiffs' patents nationwide, including in Indiana.  It also ignores Defendants' deliberate decision to challenge intellectual property they knew to be held in Indiana and to direct a notice letter regarding that property to Plaintiff Eli Lilly and Company ("Lilly") in Indiana.

Before responding to Defendants' motion, Plaintiffs should be allowed to take limited, focused fact discovery to test Defendants' allegations and to develop a record in further support of Plaintiffs' jurisdictional contentions.  Courts routinely allow limited jurisdictional discovery in response to a motion to dismiss, and this Court should likewise do so here.  Accordingly, by this motion, Plaintiffs respectfully request leave to take limited, focused discovery on the factual issues raised by Defendants' motion, and to stay briefing on the Defendants' motion to dismiss until that discovery is completed.

## BACKGROUND

This is a Hatch-Waxman pharmaceutical patent case about two patents protecting the blockbuster anti-cancer drug pemetrexed, which Lilly sells under the trade name ALIMTA®. Each of those patents has been the subject of Hatch-Waxman litigation before.  One patent (U.S. Patent No. 7,772,209, "the '209 patent") is directed to methods of administering pemetrexed with folic acid and vitamin B$_{12}$.  That patent was upheld by this Court after a trial on validity, *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, No. 1:10-cv-1376-TWP-DKL, 2014 WL

1350129, at *20 (S.D. Ind. Mar. 31, 2014), and will be the subject of a trial on infringement before this Court in January 2015.  It is also the subject of a series of other actions before this Court in which generic pharmaceutical companies have challenged the '209 patent's validity, all of which have been stayed pending the outcome of the *Teva* matter.  *Eli Lilly & Co. v. Accord Healthcare, Inc., USA*, No. 1:12-cv-0086-TWP-DKL; *Eli Lilly & Co. v. Apotex Inc.*, 1:12-cv-0499-TWP-DKL (S.D. Ind.) (consolidated with No. 1:12-cv-0086-TWP-DKL); *Eli Lilly & Co. v. Sun Pharma. Indus. Ltd.*, No. 1:13-cv-1469-TWP-DKL. The second patent (U.S. Patent No. 5,344,932, "the '932 patent"), which is owned by Plaintiff Princeton University and exclusively licensed to Lilly, covers the compound pemetrexed itself.  The validity of that patent was upheld, following a stipulation of infringement and a bench trial, by the United States District Court for the District of Delaware, and the decision was affirmed by the Federal Circuit.  *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d 1368, 1381 (Fed. Cir. 2012); *see Eli Lilly & Co. v. Teva Parenteral Meds. Inc.*, No. 08-335-GMS, 2011 WL 3236037, at *4 (D. Del. July 28, 2011).

Defendants have now brought yet another Hatch-Waxman challenge to these patents. The Hatch-Waxman Act allows a generic pharmaceutical manufacturer to trigger a patent infringement lawsuit, and thereby challenge the validity of the patents covering an innovator company's drug product, before the generic manufacturer sells its generic copy of the branded company's product.  *See Bayer Schering Pharma AG v. Lupin, Ltd.*, 676 F.3d 1316, 1318 (Fed. Cir. 2012) (the Act creates an "'artificial' act of infringement" allowing an action "in which issues of patent infringement and validity can be resolved").  The generic manufacturer does so by filing an ANDA containing a certification (known as a "Paragraph IV" certification) that the patents are "invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted."  21 U.S.C. § 355(j)(2)(A)(vii)(IV).  The generic

3

manufacturer must then provide the patent owner with a Notice Letter informing it of the ANDA filing, accompanied by a "detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed." *Id.* § 355(j)(2)(B)(iv)(II). To forestall the "immediate[]" approval of the ANDA, the patent owner must bring an infringement suit against the filer of the ANDA within forty-five days of receiving the Notice Letter. *Id.* § 355(j)(5)(B)(iii); *see* 35 U.S.C. § 271(e)(2); *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 676–78 (1990). If it does so, there is an automatic thirty-month stay of the approval of the ANDA to allow the litigation to proceed. 21 U.S.C. § 355(j)(5)(B)(iii).

Here, Defendant Nang Kuang Pharmaceutical Co. ("Nang Kuang") is a Taiwanese generic drug manufacturer that has filed an ANDA seeking approval to market generic versions of ALIMTA®. Br. in Supp. of Defs.' Mot. to Dismiss ("Br."), ECF No. 12, at 3; Chen Decl. (Br. Ex. A) ¶¶ 2, 3. Nang Kuang's ANDA contained a Paragraph IV certification as to both the '932 and '209 patents. Following the Hatch-Waxman process, Nang Kuang and CANDA jointly sent a Notice Letter to (among others) Lilly's Indianapolis-based General Counsel and its Indianapolis trial counsel. Ex. 1, Notice Letter. The Notice Letter stated Defendants' view that the '932 and '209 patents are invalid (notwithstanding the Federal Circuit's and this Court's contrary rulings). *Id.* It did *not* assert that the '932 patent is not infringed. And while it did assert that the '209 patent is not infringed as a matter of law, it did not allege non-infringement on any basis relating specifically to Nang Kuang's ANDA or proposed generic products. *Id.* at 7.[1] Thus, contrary to Defendants' bald assertions that "[a]ll relevant documents and witnesses

---

[1] Defendants argue that method-of-use claims such as those in the '209 patent can *never* be infringed in a Hatch-Waxman case. Notice Letter at 7. Not only is this argument completely unsupported by precedent, it is flatly contradicted by 35 U.S.C. § 271(e)(2), which makes it an act of infringement to submit an ANDA with a Paragraph IV certification "for a drug claimed in a patent or *the use of which is claimed in a patent*." (Emphasis added.)

are located in Taiwan and Texas," Br. at 9, this case is primarily, if not exclusively, about the validity of Plaintiffs' patents, an issue as to which most of the relevant documents and witnesses are located in Indiana, and none of which are in Texas or Taiwan.

CANDA is an LLC that was formed on or about August 7, 2014.  Br. Ex. E (CANDA Company Agreement); Br. Ex. D (Certificate of Formation).  CANDA entered into a "Development, Assignment, and Supply Agreement" with Nang Kuang on or about August 12, 2014.  Br. Ex. B (hereinafter, "Nang Kuang-CANDA Agreement").  The Notice Letter was sent less than two weeks later, on August 25, 2014.  Although the Notice Letter was sent on joint Nang Kuang and CANDA letterhead and described the ANDA as the "CANDA/Nang Kuang ANDA," it now appears that CANDA has no current interest in the ANDA.  Rather, under the agreement between CANDA and Nang Kuang, "*[u]pon receiving Regulatory Approval of the Product from the FDA*"—if and when that happens—"Nang Kuang *shall* assign the Product ANDA" to CANDA.[2]  Br. Ex. B, at 6, § 2.03 (emphasis added).  If and when it receives approval, Nang Kuang has agreed to supply the ANDA products to CANDA, and CANDA has agreed to "market, sell, and distribute" them throughout the "Territory," *i.e.*, the United States. *Id.* at 5, 8, §§ 1.33, 3.03, 3.04.  CANDA also has the responsibility to control this litigation.  *Id.* at 7, §§ 3.01(a).  It does not appear from the information available to Plaintiffs and the Court that CANDA has any role with respect to the ANDA before approval.  CANDA specifically denies being involved in preparing or submitting the Nang Kuang ANDA.  Beaufils Decl. (Br. Ex. C) ¶ 3.

---

[2] The agreement appears to immediately assign "all Regulatory Approvals" to CANDA, Br. Ex. B, at 6, § 2.03, but there have been no such regulatory approvals (and this litigation is, in significant part, about when any such regulatory approvals should be permitted to occur).  The assignment is also "subject to Section 10.04(b)" of the agreement, but that section was redacted from the version of the agreement provided to the Court and Plaintiffs.  *Id.*

In response to Defendants' Notice Letter, Plaintiffs brought suit in this Court, seeking an order (pursuant to 35 U.S.C. § 271(e)(4)) that the approval date of Nang Kuang's ANDA be not earlier than the expiration date of Plaintiffs' patents.  Plaintiffs also requested declaratory and injunctive relief to bar the making, using, selling, offering for sale, marketing, distributing, or importing of Defendants' ANDA products in the United States, including in Indiana, before that expiration date.[3]

Defendants have now moved to dismiss for lack of personal jurisdiction.  They argue that neither Nang Kuang nor CANDA is subject to personal jurisdiction in Indiana; that Nang Kuang, though a foreign company that is undisputedly subject to jurisdiction in the United States (because it filed an ANDA), is *not* subject to jurisdiction under Fed. R. Civ. P. 4(k)(2); and that CANDA is an indispensable party because of its rights under the Nang Kuang-CANDA Agreement.  By this motion, Plaintiffs seek discovery on each of these issues.

## ARGUMENT

Courts have discretion to grant personal jurisdiction discovery, and regularly grant leave to conduct such discovery before resolving a motion to dismiss for lack of such jurisdiction.  *See, e.g.*, *Eli Lilly & Co. v. Accord Healthcare, Inc., USA et al.*, No. 1:14-cv-00389-SEB-TAB, ECF No. 231 (S.D. Ind. July 16, 2014); *Draper, Inc. v. MechoShade Sys., Inc.*, 2012 WL 287480, at *2 (S.D. Ind. Jan. 30, 2012); *Novo 1, Inc. v. Levendo, LLC*, 2011 WL 3047679, at *2 (E.D. Wis. July 25, 2011); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1073 (E.D. Wis. 2008); *Black & Decker, Inc. v. Shanghai Xing Te Hao Industrial Co., Ltd.*, 2003 WL 21383325, at *3 (N.D. Ill. June 12, 2003); *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997).  Indeed, limited jurisdictional discovery facilitates resolution of jurisdictional issues, 8 Charles

---

[3] These expiration dates are inclusive of any "extension(s) and additional period(s) of exclusivity."  Complaint at 9–10.

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2008.3 (3d ed. 2014)

(resolution of jurisdictional issues is often "impossible" without "factual input"), and it can be an

abuse of discretion to deny such discovery, *Central States, S.E. and S.W. Areas Pension Fund v.*

*Phencorp Reinsurance Co.*, 440 F.3d 870, 876, 878 (7th Cir. 2006) (discovery required where a

*prima facie* or plausible basis for jurisdiction exists).[4]

As described in greater detail below, there is ample basis here to allow such limited

discovery on three separate, fact-dependent issues raised by Defendants' motion: (1) Defendants'

contacts with Indiana, including contacts that will exist upon approval of the ANDA, which will

be relevant to personal jurisdiction; (2) Nang Kuang's alleged contacts with Texas, which, it

claims, defeat jurisdiction under Federal Rule of Civil Procedure 4(k)(2); and (3) the relationship

between Nang Kuang and CANDA, which relates not only to Nang Kuang's putative contacts

with Texas, but also bears on Defendants' argument that CANDA is an indispensable party

without which this suit cannot proceed.  Defendants submitted declarations in support of their

positions on these various issues.  Plaintiffs should be allowed to explore these declarations and

further develop evidence as to each of these issues to enable the Court to decide Defendants'

motion on a fully developed evidentiary record.

## I.     Discovery Regarding Defendants' Contacts with Indiana

### A.     Defendants' Jurisdictional Contentions

The personal jurisdiction inquiry is necessarily a fact-intensive one.  Personal jurisdiction

may be exercised in one of two ways:  through general jurisdiction, in which a court considers

whether a party's overall contacts with a State mean that it is essentially "at home" there so as to

---

[4] This brief does not recite all of Plaintiffs' arguments regarding personal jurisdiction, which
they intend to provide in a merits opposition to Defendants' Motion with the benefit of a
developed factual record.  But even the limited arguments presented here demonstrate that there
is far more than a mere "plausible basis" for jurisdiction.

render the party subject to jurisdiction in that State for all purposes, *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014); or through specific jurisdiction, in which the court examines the contacts between the defendant and the forum state as they relate to the dispute at issue. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Defendants have accompanied their motion with witness declarations to provide evidence in support of their allegations that neither type of jurisdiction exists here. Chen Decl. ¶¶ 2–11; Beaufils Decl. ¶¶ 2–11. Defendants' declarations, however, depend on underlying evidence about Defendants' operations that is entirely within Defendants' control. In order for this Court to decide the question of personal jurisdiction on a fully developed and reliable record, Defendants should not be allowed to stand on conclusory declarations that they have no contacts with Indiana; Plaintiffs should be allowed to take limited discovery to confirm Defendants' allegations and to depose the Defendants and their declarants.

**B.      Evidence of Defendants' Intended Infringing Conduct in Indiana**

In addition to testing the evidence that Defendants have adduced, Plaintiffs should also be allowed the opportunity to take jurisdictional discovery into Defendants' intended infringing conduct in Indiana. In their Complaint, Plaintiffs alleged that upon approval of the ANDA, Defendants intend to distribute infringing products in Indiana. Complaint, ECF No. 1, ¶¶ 8, 10. Despite the fact that it is obviously quite rare, if not unheard-of, for a company to go to the expense and trouble of developing and seeking FDA approval to distribute a drug product without any intention of actually distributing that product, Defendants brush Plaintiffs' allegations aside. Rather, their entire argument regarding the absence of "minimum contacts" to support specific personal jurisdiction in Indiana is that the only act of infringement that has *yet* occurred was "technical," "namely Nang Kuang's submission of the ANDA." Br. at 8. Indeed, they go so far as to insinuate that by alleging specific personal jurisdiction, Plaintiffs have

somehow run afoul of their obligations under Rule 11 because Defendants have not *to date* sold or distributed any products in Indiana or the United States.  Br. at 5.[5]

Defendants' argument fundamentally misapprehends the Hatch-Waxman process and the purpose of a Hatch-Waxman case.  It means nothing that Defendants have not yet sold or distributed their pemetrexed ANDA products in the United States.  They cannot do so because Nang Kuang's ANDA has not been approved.  The very relief that Plaintiffs seek through this proceeding, consistent with the Hatch-Waxman regulatory scheme, is to delay the effective date of the ANDA approval until Plaintiffs' patents expire.  Complaint, ECF No. 1, at 9–11; 35 U.S.C. § 271(e)(4).

Defendants' motion all but ignores this posture, which warrants an inquiry into the contacts that Defendants will have with Indiana when and if the ANDA is approved.  It is well-settled that infringing sales within a forum state give rise to personal jurisdiction.  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994).  In the Hatch-Waxman context, the infringement inquiry is based not on something that the accused infringer has *already* distributed, but on "what a generic applicant asks for and receives approval to market"— that is, what the generic company will do assuming its ANDA is approved.  *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1279 (Fed. Cir. 2013); *see Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1331 (Fed. Cir. 2003) ("[T]he question of infringement must focus on what the ANDA applicant will likely market if its application is approved, an act that has not yet occurred.").  Thus, the focus here should be on the Defendants' intentions to deliberately direct future infringing sales into Indiana.  By filing an ANDA with a Paragraph IV certification, Nang

---

[5] Defendants' allegations are particularly startling given the clear circuit precedent that "[a] complaint need not include facts alleging personal jurisdiction."  *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Kuang has sought approval from the FDA to engage in infringing conduct throughout the United States, including in Indiana.  Ex. 1, Notice Letter.  And CANDA has apparently obligated itself to "use Commercially Reasonable Efforts to market, sell, and distribute the Product in the Territory"—*i.e.*, to engage in infringing conduct throughout the United States, including in Indiana.  Br. Ex. B at 5, 8, §§ 1.33, 3.03.

Although these facts, standing alone, establish a substantial case for personal jurisdiction, Plaintiffs should have the opportunity to develop additional evidence.  Plaintiffs do not have any of Nang Kuang's actual FDA submissions (which will directly evidence what Nang Kuang has sought permission from the FDA to market, and whether there are any geographic limitations on the approval it has sought, which there no doubt are not).  Nor do Plaintiffs have access to the complete agreement setting forth the rights and responsibilities of the Defendants upon approval of the ANDA; Defendants have provided the Court and the Plaintiffs only with a heavily redacted version of the Nang Kuang-CANDA Agreement.  Br. Ex. B.  Even in the version filed under seal,[6] far more material has been redacted than left uncovered, and the redacted material includes such relevant provisions as the definition of the agreement's "Term," as well as unspecified conditions on Nang Kuang's supply of the infringing product.  *Id.* §§ 2.05, 3.04 (each of which is "subject to Section 6.06," which was not provided).  Plaintiffs should be afforded the opportunity to obtain discovery into Defendants' plans for distributing their ANDA product upon approval, Nang Kuang's FDA submission, and the complete agreement between Nang Kuang and CANDA, as well as related documents and 30(b)(6) testimony.

In addition, Plaintiffs should be granted leave to take targeted discovery regarding Defendants' practices in commercializing other generic pharmaceutical products, which bear on

---

[6] Defendants initially filed their agreements, although heavily redacted, under seal.  The seal was lifted by this Court's Order of November 4, 2014.  ECF No. 32.

the ultimate question of what Defendants will do if and when the instant ANDA is approved.

Defendants have argued that they have not sold or distributed other products in Indiana (Br. at 5),

but this assertion—even if literally true—is misleading.  Although this is not the first ANDA that

Nang Kuang has filed, *see Cephalon, Inc. v. Nang Kuang Pharmaceutical Co., Ltd.*, No. 1:14-cv-

05180-SJ-RER (E.D.N.Y. Sept. 3, 2014), the Nang Kuang-CANDA Agreement suggests that

Nang Kuang does not sell or distribute products itself; here, that is CANDA's responsibility.  Br.

Ex. B, at 8, § 3.03.  It is thus no surprise, but also entirely meaningless, that "Nang Kuang does

not distribute any drug products in the United States, or more specifically Indiana."  Chen Decl.

¶ 7.  Even in this case, Nang Kuang is apparently not planning to distribute its generic

pemetrexed product itself, yet it is clearly intending to make a product that will be sold on its

behalf in the United States.  The fact that Nang Kuang may not distribute the product itself is not

the end of the story.

Likewise, the CANDA entity that is a Defendant—CANDA NK-2, LLC—was created

days before it entered into its agreement with Nang Kuang and less than three weeks before the

Notice Letter was sent; it was apparently created specifically for this litigation.  It therefore

proves nothing that *this particular recently created LLC* has not sold other products.  Indeed, its

manager and sole member, CANDA Pharma LLC, is at least the registered agent for

approximately half a dozen *other* LLCs that appear analogous to CANDA NK-2.  *See* Ex. 2,

Texas Office of the Comptroller Tax Records for CANDA-BE1, LLC, CANDA GP-1, LLC,

CANDA-ME1, LLC, CANDA NE-1, LLC, CANDA NK-1, LLC, and CANDA-SE1, LLC; *see*

*also Cephalon*, No. 1:14-cv-05180-SJ-RER (E.D.N.Y.) (CANDA NK-1 is a defendant).

CANDA Pharma's apparent practice of creating a separate LLC for each Hatch-Waxman

challenge it seeks to bring should not insulate Defendants from discovery into the infringing conduct in which they intend to engage if the ANDA is approved.

Accordingly, Plaintiffs respectfully request that, in addition to questioning Nang Kuang and CANDA NK-2 about their plans regarding generic pemetrexed, Plaintiffs be afforded the opportunity to obtain limited document and deposition discovery from CANDA Pharma LLC regarding its generic pharmaceutical commercialization strategy, its reasons for creating CANDA NK-2, and its intentions regarding CANDA NK-2's commercialization of generic pemetrexed.

### C.   Defendants' Conduct Directed at Eli Lilly in Indianapolis

Separate and apart from Defendants' intended sales in Indiana, Defendants' targeting of their Hatch-Waxman challenge at Lilly in Indiana is a basis for specific personal jurisdiction over Defendants in Indiana.  Plaintiffs should be allowed the opportunity to obtain discovery into this aspect of Defendants' conduct.

Under longstanding Supreme Court precedent, generally referred to as the "effects test," a court may, consistent with due process, exercise specific personal jurisdiction where the intended effects of a party's intentional act will—by conduct directed toward and knowledge of impacts in that state—injure a plaintiff in that state.  *See Calder v. Jones*, 465 U.S. 783, 789 (1984); *Walden*, 134 S. Ct. at 1123–24.  Consistent with this precedent, deliberate infringement of or interference with property rights gives rise to specific personal jurisdiction in the state where the infringer knows the injury will occur.[7]  Accordingly, in a Hatch-Waxman case, where a generic

---

[7] *See, e.g.*, *Tamburo v. Dworkin*, 601 F.3d 693, 702-10 (7th Cir. 2010) (tortious interference and other claims); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077–78 (10th Cir. 2008) (copyright claims); *Bancroft & Masters Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (trademark infringement expressly aimed at a state); *SpeedConnect LLC v. Idaho Falls Wireless Partnership*, 960 F. Supp. 2d 1114, 1121–24 (D. Idaho 2013) (intentional interference with contract rights); *Venture Tape Corp. v. McGills Glass Warehouse*, 292 F. Supp.

pharmaceutical manufacturer has knowingly challenged a patentee's intellectual property rights by "purposefully direct[ing]" a notice letter to the patentee in its home state, specific personal jurisdiction is appropriately exercised over the generic challenger in that state. *AstraZeneca AB v. Mylan Pharms., Inc.*, No. 1:14-cv-00696-GMS, ECF No. 26, slip op. at 14–15 (D. Del. Nov. 5, 2014) (Ex. 3).

Here, Defendants directed the Notice Letter associated with their Paragraph IV certification at Lilly and Lilly's counsel in Indiana. In so doing, they voluntarily and deliberately targeted Lilly in Indiana by challenging Lilly's intellectual property rights. Indeed, Indiana is the central location for the injury in the United States, as Lilly is the owner of one of the patents at issue and exclusive licensee of the other, and it is based in Indiana. Contrary to Defendants' allegations (Br. at 9), therefore, Indiana has a particular interest in litigating this case—Defendants have deliberately placed at risk the intellectual property of an Indiana company, much of which was developed in Indiana.

Accordingly, in addition to taking discovery into Defendants' intended conduct upon approval of the Nang Kuang ANDA, Plaintiffs should have the opportunity to develop a full record of Defendants' knowledge and intent in mounting a Paragraph IV challenge and directing it at Lilly in Indiana.

---

2d 230, 233 (D. Mass. 2003) (deliberate infringement compared to a gunman firing across state lines); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 836 (N.D. Ill. 2000) (deliberate trademark infringement). And while patent infringement is a strict liability tort and is most often considered to give rise to an injury where infringing sales occur, *see Beverly Hills Fan*, 21 F.3d 1558, 1565 (Fed. Cir. 1994), the Federal Circuit has recognized that in declaratory judgment actions, where the parties seek to litigate infringing conduct before it happens, "[t]he relevant inquiry for specific personal jurisdiction purposes" is to what extent the defendant has "'purposefully directed [its conduct] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332–33 (Fed. Cir. 2009). Here, the case arises out of Defendants' decision to "purposefully direct[]" a notice letter to Indiana in an effort to challenge property rights held in that state.

II.     **Nang Kuang's Purported Contacts with Texas**

Discovery is also appropriate into Nang Kuang's purported contacts with Texas because Nang Kuang has asserted that these contacts defeat jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  Rule 4(k)(2) provides that

> [f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Thus, Rule 4(k)(2) "provide[s] a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

If this Court does not exercise personal jurisdiction over Nang Kuang on the bases discussed above in Part I, then Plaintiffs assert that there is no personal jurisdiction over Nang Kuang in any particular state, and exercising Rule 4(k)(2) jurisdiction is appropriate.  As Nang Kuang itself emphasizes, "[a]ll Nang Kuang's facilities are located in Taiwan."  Chen Decl. ¶ 6. Yet it is undisputed that Nang Kuang has a sufficient connection with the United States as a whole for the exercise of personal jurisdiction to be appropriate in federal district court; the instant case is over Nang Kuang's infringement of a federal property right by virtue of its filing of an ANDA with the U.S. Food and Drug Administration.  This situation, in which a "defendant [i]s a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction," is exactly the reason

14

why Federal Rule of Civil Procedure 4(k)(2) was enacted.  Fed. R. Civ. P. 4, 1993 cmt.; *see*

*Merial*, 681 F.3d at 1294.

Defendants' response to this line of reasoning is to assert that Nang Kuang is subject to

jurisdiction in the Western District of Texas, and therefore that Rule 4(k)(2) does not apply.  Br.

at 12.  But contrary to Defendants' suggestion, Nang Kuang "cannot defeat Rule 4(k)(2) by

simply naming another state."  *Merial*, 681 F.3d at 1294.  Rather, under Federal Circuit law—

which applies to questions of personal jurisdiction in patent infringement cases—Nang Kuang

must show that there is some other forum where Plaintiffs "*could have* brought suit—a forum

where jurisdiction would have been proper at the time of filing, regardless of consent."  *Id.* at

1292, 1294.  Defendants' submission falls far short of that standard.  The only proffered contacts

between Nang Kuang and Texas are Nang Kuang's "dealings with CANDA in Waco, Texas,"

and specifically, the various actions that Nang Kuang has agreed to undertake under the Nang

Kuang-CANDA Agreement, such as Nang Kuang's future transfer of the ANDA to CANDA

after the ANDA is approved and its agreement to supply its infringing products to CANDA after

approval.  Br. at 12.  As a threshold matter, none of the evidence Defendants submitted actually

supports their assertion that "Nang Kuang will exclusively manufacture and supply the ANDA

products to CANDA *in Texas*."  Br. at 12 (emphasis added).[8]  But even assuming, as Defendants

assert, that these activities will ultimately take place in Texas, Defendants concede that they will

only take place "[w]hen the FDA approves the ANDA."  *Id.*; *see* Br. Ex. B, at 6–7, §§ 2.03, 2.05.

---

[8] While the Nang Kuang-CANDA Agreement was executed under Texas law, the unredacted
portions provided to the Court and Plaintiffs simply state that "Nang Kuang shall exclusively
Manufacture and supply Product for the Territory [*i.e.*, the entire United States] to CANDA at
the [REDACTED] and pursuant to the terms of [REDACTED]."  Nang Kuang-CANDA
Agreement at 7, § 2.05.  Thus, even though Defendants point to Nang Kuang's "manufacture and
supply" of the ANDA products as evidencing a Texas connection, the evidence they have
proffered does not establish that any acts of infringement will take place in Texas to a greater or
lesser extent than elsewhere.

Thus, the only way, even under Defendants' own theory, in which Nang Kuang's "dealings with CANDA in Waco, Texas" could give rise to specific personal jurisdiction in Texas is if the infringing actions it has agreed to undertake following approval of the ANDA are relevant to the jurisdictional inquiry.

If Defendants' anticipated post-approval conduct is relevant to the jurisdictional inquiry, however, then there is specific jurisdiction over both Defendants in Indiana, for the reasons discussed above in Part I: they intend to distribute their ANDA products throughout the United States and thus commit patent infringement in Indiana. If, on the other hand, there is no jurisdiction in Indiana because Defendants' intended post-approval conduct is to be disregarded, as Defendants argue it should be (Br. at 8), then there similarly is no jurisdiction in Texas based on such post-approval conduct. Defendants cannot have it both ways: post-approval conduct as a basis for jurisdiction in Texas, but a total disregard of such post-approval conduct to deny jurisdiction in Indiana. That is, Nang Kuang cannot rely on the "technical" nature of Hatch-Waxman infringement to escape inquiry into its intended infringing actions upon approval of the ANDA (Br. at 8), yet defeat jurisdiction under Rule 4(k)(2) by pointing to what it will do in Texas once the ANDA is approved (Br. at 12).

For these reasons, and in order for this Court to decide whether there is personal jurisdiction under Rule 4(k)(2) on a fully developed record, Plaintiffs should be permitted to take limited discovery not only into Defendants' contacts with Indiana, but also into Nang Kuang's contacts with Texas. In particular, Plaintiffs should be permitted to inquire, beyond the limited information that Defendants have provided in their declarations and redacted agreements, into the rights and responsibilities of Nang Kuang under the Nang Kuang-CANDA Agreement, as well as into the purported "activities related to this action . . . in Waco, Texas," Br. at 12, that

16

Defendants may put forward in support of an argument that Plaintiffs "could have brought suit" there. *Merial*, 681 F.3d at 1294.[9]

### III.    CANDA's Status as a Necessary and Indispensable Party

Finally, Plaintiffs should be permitted discovery into the relationship between CANDA and Nang Kuang for the additional reason that Defendants have asserted that CANDA is an indispensable party.  Defendants argue that even if there is jurisdiction in this Court over Nang Kuang—for example, under Rule 4(k)(2)—the case should still be dismissed because it cannot proceed without CANDA under Federal Rule of Civil Procedure 19.  Br. at 12–15. Defendants argue that CANDA is indispensable because "disposition of this case without CANDA would affect CANDA's current interests in the ANDA in the United States," and that CANDA would be prejudiced because its interests are not aligned with Nang Kuang's.  Br. at 13, 14.  They further argue that the suit must proceed in a forum where CANDA can participate because if the suit proceeds against Nang Kuang alone and the ANDA is subsequently approved, "Plaintiffs may sue CANDA on essentially the same facts, making the judgment against Nang Kuang without value to CANDA."  Br. at 15.

As an initial matter, Defendants' suggestion that CANDA is either "necessary" under Rule 19(a) or "indispensable" under Rule 19(b) because it might be subject to a separate infringement suit is without merit.  Br. at 14–15.  It is hornbook law that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit" and thus that joint tortfeasors

---

[9] In the Conclusion to their motion, Defendants suggest, for the first time, that Nang Kuang's contacts with Waco give rise to *general* personal jurisdiction rather than specific personal jurisdiction.  Br. at 15.  It is difficult to see how any of Nang Kuang's asserted contractual activities in Texas—even if all of them are deemed relevant to the jurisdictional analysis—are "so substantial and of such a nature as to render" Nang Kuang "at home" in Texas.  *Daimler*, 134 S. Ct. at 761 n.19.  But if that is Defendants' contention, that is all the more reason why discovery is necessary; Plaintiffs should have the opportunity to inquire whether Nang Kuang's contacts with Texas indeed support an assertion of general jurisdiction there.

are neither "necessary" nor "indispensable" under Rule 19 by virtue of the fact that they may be subject to separate, or even inconsistent, judgments. *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990). Nor is CANDA a necessary or indispensable party merely because it may have an economic interest in the outcome of the case. *See, e.g.*, *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) ("[A] party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action."); *Helzberg Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816, 820 (8th Cir. 1977) ("[I]t is generally recognized that a person does not become indispensable to an action . . . simply because that person's rights or obligations under an entirely separate contract will be affected by the result of the action.").

Discovery is warranted, however, as to two aspects of Defendants' claims regarding CANDA's status as an indispensable party. First, the record available to the Court and Plaintiffs appears to belie Defendants' contention that CANDA's interests might diverge in some unspecified way from Nang Kuang's. The Nang Kuang-CANDA Agreement states that CANDA "has the right, in its sole discretion, to control the defense and resolution of any claims . . . against CANDA and/or Nang Kuang in an ANDA Litigation with legal counsel of its own choice." Br. Ex. B at 7, § 3.01. Thus, *whether or not CANDA is a named party*, it appears to have every ability to control this litigation and any resolution thereof and protect its own interests, and Nang Kuang has apparently already contracted away its separate control of the litigation. Second, the Nang Kuang-CANDA Agreement appears to state, as discussed above in Part II, that CANDA only acquires rights in the Nang Kuang ANDA if and when it is approved. *Id.* at 6, § 2.03. Plaintiffs can get complete relief against Nang Kuang alone because if Plaintiffs prevail in this litigation, the effective date of any approval of the ANDA will be at patent expiry.

18

35 U.S.C. § 271(e)(4).  For the same reason, CANDA does not have any "current interest" to protect and will only obtain such an interest if and when the ANDA is approved.  Thus, although the record currently before the Court is highly suggestive that CANDA is not an indispensable party, Plaintiffs should be allowed to take discovery to confirm and further develop facts relating to the arguments in Defendants' motion.

*     *     *

Allowing limited jurisdictional discovery into each of the issues discussed above is fair and will not work any undue hardship on Defendants.  Defendants deliberately triggered this litigation by filing a Paragraph IV certification and sending Lilly a Notice Letter in Indiana.  In so doing, they deliberately infringed intellectual property rights they knew to be held in Indiana.  Their contractual agreement expressly contemplated ANDA litigation.  *See* Br. Ex. B, at 7, § 3.01(a) ("ANDA Litigation").  Nang Kuang is a Taiwanese entity that can litigate (including for purposes of limited jurisdictional discovery) as conveniently in Indiana as Texas, where it asserts that jurisdiction is appropriate.  And CANDA, though a Texas LLC, has chosen counsel in New York who are no more burdened by limited jurisdictional discovery in Indiana than they would be by litigation in Texas.  Balanced against any small burden that Defendants may face, Plaintiffs have made a substantial showing of personal jurisdiction, for all the reasons discussed above.  The requested discovery is appropriate, limited in scope, and is tailored to allow Plaintiffs to fully develop their arguments and ensure that the Court decides the issues on a complete factual record.

<strong><u>CONCLUSION</u></strong>

Accordingly, for the reasons set forth above, Plaintiffs respectfully request leave to:

- Serve Requests for Production of Documents seeking complete and unredacted copies of Defendants' exhibits, as well as information about Defendants' connections to and

19

conduct directed toward Indiana, about Nang Kuang's connections to and conduct directed toward Texas, and about the contractual agreements and relationship between the Defendants;

- Serve 15 or fewer Interrogatories on each Defendant, with questions seeking information about those issues;

- Take one Rule 30(b)(6) deposition of each Defendant (and the depositions of Defendants' declarants, if they are not the Rule 30(b)(6) designees) to ask about those issues; and

- Serve a subpoena on CANDA's Manager, CANDA Pharma LLC, to obtain documents and 30(b)(6) deposition testimony regarding its practices in commercializing generic pharmaceutical products and its intentions with regard to generic pemetrexed.

Plaintiffs request that a 90-day period be allowed for this discovery.  Plaintiffs also request that briefing on Defendants' Motion to Dismiss be stayed until personal jurisdiction discovery has been completed.

Respectfully submitted,

Dated: November 6, 2014                    _/s/ David M. Krinsky_____
                                          Jan M. Carroll
                                          Barnes & Thornburg LLP
                                          11 South Meridian Street
                                          Indianapolis, IN 46204
                                          317-236-1313
                                          jan.carroll@btlaw.com

                                          Bruce R. Genderson
                                          Adam L. Perlman
                                          Ellen E. Oberwetter
                                          Dov P. Grossman
                                          David M. Krinsky
                                          Andrew V. Trask
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth Street, N.W.
                                          Washington, DC 20005
                                          (202) 434-5000 (telephone)
                                          bgenderson@wc.com
                                          aperlman@wc.com
                                          dgrossman@wc.com

eoberwetter@wc.com
dkrinsky@wc.com
atrask@wc.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2014, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Anthony R. Jost
Stephanie Snell Chaudhary
Riley Bennett & Egloff LLP
tjost@rbelaw.com
schaudhary@rbelaw.com

Aya Cieslak-Tochigi
Michael A. Siem
Steven R. Daniels
Farney Daniels PC
atochigi@farneydaniels.com
msiem@farneydaniels.com
sdaniels@farneydaniels.com

*Attorneys for Defendants Nang Kuang Pharma. Co. Ltd.*
*and CANDA NK-2, LLC*


/s/ David M. Krinsky